**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| AMERICAN TRAFFIC SOLUTIONS, LLC, : <br> 1330 W. Southern Avenue, Suite 101 : <br> Tempe, Arizona, 85282 : <br> and : <br> AMERICAN TRAFFIC SOLUTIONS, INC., : <br> 1330 W. Southern Avenue, Suite 101 : <br> Tempe, Arizona, 85282 : <br>           Plaintiffs, : <br>     : <br>     : <br> vs. : <br>     : <br> XEROX STATE & LOCAL SOLUTIONS, INC., : <br> 12410 Milestone Center Drive, Suite 500 : <br> Germantown (Montgomery County), : <br> Maryland  20876 : <br>     : <br>           Defendant. : <br>    : | NO. _____-MISC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO COMPEL PRODUCTION OF SUBPOENAED INFORMATION FROM**
**DEFENDANT XEROX STATE & LOCAL SOLUTIONS, INC.**

## I.     INTRODUCTION

Plaintiffs American Traffic Solutions, LLC,[1] and American Traffic Solutions, Inc.[2] (collectively

"ATS"), have moved to Compel Production of Subpoenaed Information from Defendant Xerox State &

Local Solutions, Inc. ("Xerox").  ATS served a Subpoena for this information on Xerox on April 24,

2014.  Xerox belatedly served objections to every Request, and has refused to produce any of the

---

[1] American Traffic Solutions, LLC, is a Delaware limited liability corporation whose principal place of business is located at 1330 W. Southern Avenue, Suite 101, Tempe, Arizona, 85282.

[2] American Traffic Solutions, Inc., is a Kansas corporation whose principal place of business is located at 1330 W. Southern Avenue, Suite 101, Tempe, Arizona, 85282.

requested information.  Xerox's objections are too late, and in any event are not meritorious, and Xerox should be compelled to produce the information that is responsive to the Subpoena.

ATS's Subpoena relates to a lawsuit between ATS and the Philadelphia Parking Authority ("PPA"), pending in the United States District Court for the Eastern District of Pennsylvania, captioned *Philadelphia Parking Authority v. American Traffic Solutions, LLC, and American Traffic Solutions, Inc.*, 2:14-cv-00789-JS (the "Pennsylvania Action").  In brief, ATS and PPA are engaged in a dispute that relates, in part, to the ownership of certain assets that are used in PPA's red-light camera enforcement program.  Xerox was awarded the contract by PPA for this program in 2013, taking over for ATS, and ATS reasonably believes that Xerox would have documents, such as communications with PPA and documents relating to the bidding process, that bear on the question of whether ATS or PPA own the infrastructure that was installed belowground by ATS in connection with this program.

Xerox was properly served with the Subpoena on April 24, 2014.  After initially claiming that it was unaware of the service of the Subpoena, Xerox served belated objections on May 23, 2014, nearly one month after service of the Subpoena.  By that time, any objections had been waived.  In addition, Xerox's objections are entirely without merit.  To date, Xerox has refused to produce a single document that is responsive to the Subpoena, despite the fact that Xerox admittedly has responsive information. ATS is entitled to the immediate production of this discoverable information, and respectfully requests that the Court grant this Motion.

## II.  <u>FACTUAL BACKGROUND</u>

PPA brought suit against ATS on or about January 31, 2014; ATS promptly removed that action to the Eastern District of Pennsylvania, where it is currently pending.  ATS has filed Counterclaims against PPA in the Pennsylvania Action for declaratory judgment, substantive Due Process violations,

unjust enrichment, and conversion.  **Exhibit 1**.  The basis for those claims, in pertinent part, is that ATS

is the successor to an Agreement with PPA to provide a red light photo system within the City of

Philadelphia.  *Id.* at ¶¶ 6-9.  ATS further alleges that, "[t]hroughout the life of the Agreement, [it] has

exclusively – at its own expense and effort – installed and maintained belowground infrastructure,

including, but not limited to, the conduit and wiring, necessary for the Red Light Enforcement Program

(the 'Belowground Assets')."  *Id.* at ¶ 10.  As the expiration of the Agreement approached, PPA issued a

Request for Proposals ("RFP") for a vendor to support the red light program; at the conclusion of that

RFP, PPA entered into a contract with Xerox.  *Id.* at ¶¶ 11-12.  Since that time, PPA – in conjunction

with Xerox – has "recklessly moved forward with its plan to assert ownership rights over or use the

Belowground Assets in violation of ATS's Constitutional and common law rights."  *Id.* at ¶ 23.

Accordingly, in order to obtain relevant information related to the Pennsylvania Action, ATS

provided PPA with notice on April 22 that it intended to serve a subpoena for documents on Xerox.

**Exhibit 2**.  ATS provided a courtesy copy of that same notice to Xerox's in-house counsel on April 23.

**Exhibit 3**.  On April 24, the Subpoena was served on Xerox's registered agent, Corporation Service

Company.  **Exhibit 4**.  The Subpoena called for the production of 15 categories of documents on May 7

at 9:00 a.m.  *Id.*

After the May 7 deadline came and passed with no response from Xerox, ATS wrote to Xerox's

in-house counsel on May 8 to inquire as to the status and demand production by no later than May 13.

**Exhibit 5**.  ATS included with this letter another copy of the Subpoena.  *Id.*  Xerox's in-house counsel,

Wes Wadle, responded to this letter on May 13.  **Exhibit 6**.  Mr. Wadle first claimed that ATS had only

served PPA, not Xerox, with the Subpoena.  Then Mr. Wadle claimed that he did not have a copy of the

Subpoena, despite the fact that he had a copy of ATS's letter of May 8 that enclosed another copy of the

Subpoena.  Finally, Mr. Wadle then contended that Xerox had not been properly served, and "question[ed] [ATS's] sincerity in serving the subpoena." *Id.*

After ATS rebuffed each of these excuses, Xerox's attorney stated in a May 13 email that Xerox would "accept this copy [of the Subpoena] as service as of today, and respond accordingly." *Id.*  ATS then heard nothing more from Xerox until its outside counsel communicated to ATS's counsel, in a call on May 20 and an email on May 21, that Xerox would not produce documents responsive to the Subpoena unless ATS agreed to pay all of Xerox's costs, estimated to be at least $60,000, in retrieving and reviewing the requested information.  **Exhibit 7**.  In that communication, Xerox made plain that it "will not begin collecting electronic data until ATS agrees to pay for the costs incurred." *Id.*  It was not until May 23, thirty (30) days after the Subpoena was served, that Xerox finally served Responses and Objections to the Subpoena.  In these Objections, Xerox refused to produce any documents until "ATS agrees to the payment of Xerox's costs associated with the electronic discovery called for under this subpoena" and objected to every Request.  **Exhibit 8**.  To date, Xerox has failed to produce a single document.

## III.   ARGUMENT

In general, parties may obtain discovery regarding any matter, not privileged, that appears to be reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P. 26(b)(1).  Further, Rule 45 permits a party to serve a subpoena on a non-party to obtain that discovery for a matter pending in another District.  *See* Fed. F. Civ. P. 45.

Here, Xerox should be ordered to immediately respond in full to ATS's Subpoena for the following reasons.  *First*, Xerox waived its objections under Rule 45 and, as a result, cannot seek the protections of that Rule.  The Subpoena was served on April 24 and called for production on May 7, yet

4

Xerox did not serve its objections until May 23.  **Exhibit 4**; **Exhibit 8**.  Under Rule 45, Xerox's objections were due "before the earlier of the time specified for compliance or 14 days after the subpoena is served," which at the latest was May 7.  Fed. R. Civ. P. 45(d)(2)(B).  Numerous courts have held that the failure to serve written objections typically constitutes a waiver, barring unusual circumstances and good cause.  *See, e.g., Anwalt Energy Holdings, LLC v. Falor Cos.*, No. 06-955, 2008 WL 2268316, at *1-2 (S.D. Ohio June 2, 2008) (noting the general rule and that "unusual circumstances" have been found to exist "where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for the subpoena," and holding that none of those factors existed to excuse non-party "from raising timely objections to service or personal jurisdiction, or from moving to quash the subpoena," such that they were waived).  Here, Xerox failed to object in a timely manner and there were no unusual circumstances and good cause justifying its silence.  Therefore, Xerox waived all of its objections and should be required to respond to the Subpoena in full and at its own cost.

*Second*, even if Xerox did timely make objections, those objections are without merit and should be set aside.  As an initial matter, while ATS will address cost-shifting more fully *infra*, Xerox objected but then committed to producing documents in response to Requests 1, 2, and 3.  **Exhibit 8**.  Yet Xerox has, to date, failed to produce a single document.  It is highly unlikely that the ***only documents*** and communications in Xerox's possession, custody, or control are solely electronic.  Therefore, at a minimum, Xerox should immediately produce any paper or other non-electronic materials responsive to the Subpoena.

Xerox's other objections are equally unfounded.[3]  In response to Requests 5, 6, 7, 8, 9, 10, 11, and 15, Xerox stated that it would not produce documents because those Requests were "duplicative" of Requests 1 through 4 and because they seek "documents and information beyond the claims and defenses at issue here."  *Id.*  In fact, however, the Requests are not duplicative on their face and, more importantly, because Xerox has already committed to responding to Requests 1, 2, and 3, these additional Requests cannot logically be considered "beyond the claims and defenses at issue" in the Pennsylvania Action; if they were, Xerox would have refused to comply with Requests 1, 2, and 3 as well.[4]  Xerox should be ordered to respond to Requests 5, 6, 7, 8, 9, 10, 11, and 15 immediately as well.

*And third*, Xerox's compliance with the Subpoena and its responses to Requests 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, and 15 should be at its sole expense.  As noted above, Xerox wrote in response to Requests 1, 2, and 3 that it refused to produce any documents until "ATS agrees to the payment of Xerox's costs associated with the electronic discovery called for under this subpoena."  *Id.*  At around the same time, Xerox's counsel estimated such costs to be at least $60,750.  **Exhibit 7**.  Xerox's demand that ATS bear all costs – in addition to being waived, *supra* – is not supported by the law.  For example, in *Bell Inc. v. GE Lighting, LLC*, No. 14-12, 2014 WL 1630754 (W.D. Va. April 23, 2014), the parties disputed who should have to pay for imaging and copying; setting up a database, loading the materials, and applying search parameters; and document review, so Bell moved to compel.  *Id.* at *1.  The court stated that other "courts have used a multi-step inquiry to determine the equity of shifting costs.  These factors include: '(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public

---

[3] ATS does not move at this time regarding Request 4, to which Xerox responded that it "is not presently aware of any responsive, non-privileged documents," but reserves its right to do so at a later date.
[4] ATS also does not move at this time with respect to Requests 12, 13, and 14, but again reserves its right to do so at a later date.

importance.'" *Id.* at *12 (citation omitted).  Applying those factors to the facts at issue, the court held that the "the equities demand that Bell bear the costs noted above, totaling $6,142.49, and that iPack[, the non-party,] bear the remaining $10,687.51 that it primarily spent on reviewing individual documents generated by the search parameters for relevance, privilege, and protected material," primarily because "iPack is no ordinary disinterested party in these circumstances." *Id.* at *15.

Here, application of the same factors dictates that Xerox should bear all of its costs or, at a minimum, that the costs should be shared; all costs should certainly not be shifted to ATS.  As demonstrated above, Xerox has a tremendous interest in the outcome of the Pennsylvania Action, as it stands to benefit from using ATS's Belowground Assets and quite possibly adjusted its bid under the RFP based upon that potential use.  Xerox is also a much bigger company that ATS and will have no issues readily bearing the costs.  And the Pennsylvania Action is of great public importance, as the red light camera program serves to protect the public and cannot face interruptions in service.  For example, even while ATS and PPA dispute ownership of the Belowground Assets, the transition from ATS to Xerox has continued.  Because all of the factors weigh in favor of ATS, Xerox should bear all costs associated with compliance with the Subpoena.

Finally, and as noted in the Motion, ATS respectfully requests that this Honorable Court transfer its Motion to the Eastern District of Pennsylvania pursuant to Federal Rule of Civil Procedure 45(f).

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, ATS respectfully submits that the Court should enter an Order granting ATS's Motion.

By:  /s/ Peter J. Duhig
Peter J. Duhig (MD Fed. Bar ID 26899)
BUCHANAN INGERSOLL & ROONEY PC
919 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 552-4249
Email:  peter.duhig@bipc.com
   and
Gerald E. Burns (*of counsel*)
David A. Schumacher (*of counsel*)
BUCHANAN INGERSOLL & ROONEY PC
Two Liberty Place
50 S. 16th St., Suite 3200
Philadelphia, Pennsylvania 19102
Telephone: (215) 665-8700
Email: gerald.burns@bipc.com
Email: david.schumacher@bipc.com
   and
Andy Taylor (*of counsel*)
Andy Taylor & Associates, P. C.
2668 Highway 36 S, #288
Brenham, Texas  77833
Telephone:  (713) 222-1817
Email:  ataylor@andytaylorlaw.com

Dated:  June 17, 2014                    *Attorneys for Plaintiffs*