**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

---

| | |
|---|---|
| AMERICAN TRAFFIC SOLUTIONS, LLC, | : |
| and | : |
| AMERICAN TRAFFIC SOLUTIONS, INC.: | |
| | : |
| Plaintiffs, | :          No. 8:14-mc-00312 |
| | : |
| v. | : |
| | : |
| XEROX STATE & LOCAL SOLUTIONS, INC., | : |
| | : |
| Defendant. | : |

---

**RESPONSE OF DEFENDANT, XEROX STATE & LOCAL SOLUTIONS, INC.,**
**TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF**
**SUBPOENAED INFORMATION**

Xerox State & Local Solutions, Inc. (herein, "Xerox"), by and through its undersigned

counsel, hereby responds to the motion to compel filed by American Traffic Solutions, LLC, and

American Traffic Solutions, Inc. (collectively herein, "ATS").

**I.      INTRODUCTION**

This motion arises out of a litigation pending in the Eastern District of Pennsylvania,

where ATS is the defendant and counterclaim plaintiff in a matter relating to ATS's unsuccessful

bid on a contract with the Philadelphia Parking Authority (the "PPA").[1]   ATS seeks to compel

the production of documents from Xerox, which was the winning bidder on the contract but is

---

[1]      ATS filed its bid protest in the Pennsylvania Commonwealth Court.  By Order dated May 30, 2014, ATS lost its protest.  The Philadelphia Parking Authority then filed the suit underlying the instant motion, to compel ATS's satisfaction of contractual requirements to wind down its prior involvement in the PPA's Red Light Traffic Signal Photo Enforcement System.  ATS subsequently filed counterclaims against the Philadelphia Parking Authority, some of which raise similar or identical issues to those raised in its failed bid protest.

not a party to the underlying litigation.  ATS's motion is based on a theory of waiver:  it

contends that Xerox, which had no record of having been served with ATS's subpoena, waived

not only all objections (including privilege) but any right to reimbursement under Federal Rule

of Civil Procedure 45 for expensive electronic discovery.  As if to prove that procedural, good

faith oversights abound in litigation, ATS filed this motion in violation of District of Maryland

Local Rule 104.8, without holding the required conference or attaching the required certificate of

compliance.  As the Local Rules state, "as to disputes concerning discovery directed to a non-

party, unless otherwise directed by the Court, the Court will not consider the motion until a

conference has been held under L.R. 104.8.b and a certificate has been filed under L.R.

104.8.c."[2]  The Court accordingly should deny ATS's motion, or at least require ATS to satisfy

the Local Rule's requirements.

Setting aside ATS's procedural failings, ATS is not entitled to the relief it requests.  First,

ATS seeks the extraordinary and severe sanction of a ruling that Xerox waived all objections,

including on the basis of the attorney-client privilege, when, due to the fact that its in-house

lawyer had no record of service of the subpoena, it failed to respond to the subpoena within

fourteen days.  Courts in this Circuit, like in the Third Circuit where the underlying case is

pending, apply that extreme sanction only if the subpoena is narrowly tailored **or** the responding

party will incur no expense in responding to the subpoena.  Under either test, Xerox did not

waive its objections.  Further, no evidence exists that Xerox acted in bad faith, and the Court

therefore should not find that Xerox waived any objections on the basis of the attorney-client

---

[2]      The same result would have occurred had ATS filed its motion in the Eastern District of
Pennsylvania; the Policies and Procedures of Judge Juan Sanchez, before whom the case
is pending, require the parties to confer with the Court prior to the filing of a motion to
compel.  Not only did no such conference occur here, but the parties did not confer at all
prior to ATS's filing of its motion.

2

privilege. Second, ATS contends that Xerox, a nonparty, should be required to bear the costs of the electronic discovery the subpoena requires. That result also conflicts both with the law of this Circuit and Federal Rule of Civil Procedure 45, and therefore ATS's motion should be denied in that respect as well.

## II.      RELEVANT FACTUAL BACKGROUND

ATS served its subpoena on Xerox's registered agent on April 24, 2014. Xerox's legal department, however, was unaware that service of the subpoena had been accomplished. (*See* May 13, 2014 Email Exchange, attached to ATS's motion at Exhibit 6.) As Wes Wadle, Senior Corporate Counsel at Xerox, informed ATS's counsel on May 13, he had no record of the subpoena being served but agreed to accept service on that date. *Id.* Further, Mr. Wadle stated that Xerox would produce responsive documents once the issue of the cost of electronic discovery was resolved, and promised to provide ATS with an estimate of those costs. *Id.*

Xerox thereafter retained counsel, who was in touch with ATS's counsel on May 20 and May 21 regarding Xerox's forthcoming objections to the subpoena and the costs associated with the electronic discovery required to comply with the subpoena. (*See* May 21, 2014 Email Exchange, attached to ATS's motion at Exhibit 7.) On May 21, Xerox sent ATS an estimate from a third-party electronic discovery vendor showing that, for the twenty-nine email accounts that would have to be searched to comply with the subpoena, the cost of retrieving and processing that data would be $60,750. *Id.* Two days later, on May 23, Xerox served its objections on ATS. (*See* Xerox's Responses and Objections, attached to Xerox's motion at Exhibit 8.) On June 17 — 21 days after Xerox served objections — ATS filed the instant motion.

3

III.    ARGUMENT

    A.    **Under The Circumstances, Waiver Of Xerox's Objections Is Unwarranted And Inconsistent With Fourth Circuit Law.**

ATS seeks an Order that Xerox waived all objections to ATS's subpoena.  Neither the facts nor Fourth Circuit caselaw permits such a result here.

The decision in *In re Motorsports Merchandise Antitrust Litigation*, 186 F.R.D. 344 (W.D. Va. 1999), sets forth the standard employed in this Circuit for determining whether untimely objections should be deemed a waiver.  As the court in *In re Motorsports* held:

> In unusual circumstances and for good cause, however, the failure to act timely will not bar consideration of objections.  Such unusual circumstances and good cause may be shown by a subpoena that is overbroad on its face, a subpoena that would impose significant expense on a nonparty acting in good faith, or contact between counsel for the subpoenaed party and the subpoenaing party prior to the challenge to the subpoena.

*Id.* at 349.  *In re Motorsports* illustrates how outrageous a nonparty's inattention to a subpoena must be for the court to find a waiver of objections: in that case, a nonparty corporation was served with a subpoena but failed to respond until 36 days after service of the subpoena and then objected only on the basis of service.  The nonparty did not provide substantive objections for nearly four months and offered no explanation for the delay.  Further, the nonparty repeatedly made assurances that compliance with the subpoena would be forthcoming, but then failed to honor those commitments.[3]  *Id.* at 350.

Here, the subpoena is overly broad and appears designed to reach issues far outside ATS's counterclaims.  In fact, some of ATS's document requests appear to be nothing more than

---

[3]    Notably, and despite the extensive record of the nonparty's failures, the court in *In re Motorsports* ordered that the requesting party was required to reimburse the nonparty for all reasonable costs of complying with the subpoena.  *Id.*

4

attempts to gain competitive intelligence.  ATS's counterclaims relate to whether the PPA is

entitled to allow Xerox to use underground conduits ATS dug and the wiring ATS installed.  *See*

ATS's First Amended Counterclaim at ¶¶ 10, 24 (Document No. 22-4 in Case No. 2:14-cv-

00789 (E.D. Pa.).  Yet, through its subpoena ATS seeks all communications between Xerox and

the PPA (Document Request 5), documents relating to other items ATS claims ownership

interests in (see Document Request 6), documents relating to how Xerox structured its bid

(Document Requests 7 and 15), documents relating to ATS in any way (Document Request 8),

documents relating in any way to the lawsuit (Document Request 9), documents relating to any

red light photo enforcement system anywhere in the country (Document Request 10), and

documents relating to whether Xerox may later claim that ATS failed to cooperate in the

transition of services by Xerox (Document Requests 11, 12, 13, and 14).  (*See* Xerox's

Responses and Objections, attached to ATS's motion at Exhibit 8.)  To the extent ATS requested

documents relating to underground conduits and wiring, Xerox committed to producing

responsive documents once the issue of the costs of the document production was resolved.  (*See*

Xerox's Responses to Document Request 1, 2, and 3.)

Further, it is beyond dispute that Xerox will incur substantial costs in responding to the

subpoena.  Xerox already has provided ATS with an estimate from a third-party electronic

discovery vendor, which estimates the cost of compiling and processing the electronic data to be

$60,750.  (*See* May 21, 2014, Email Exchange at Exhibit 7 to ATS's motion.)  ATS does not

dispute the necessity of these costs; it seeks to impose them on Xerox or split them with Xerox.

Xerox also will incur substantial attorneys' fees reviewing the electronic data necessary to

comply with the subpoena; that amount has not yet been quantified, but courts in this Circuit routinely award the reimbursement of a nonparty's reasonable attorneys' fees, as well.[4]

Finally, and as noted above, the Court in *In re Motorsports* held that, because of the nonparty's serious delays in responding and additional dilatory conduct, it believed waiver of objections was warranted.  No such facts exist here.  Xerox acted in good faith and expeditiously:

- Where Xerox had no record of previously being served with the subpoena, it accepted service on the same day that its counsel spoke with ATS's counsel;

- It retained outside counsel to respond to the subpoena;

- It obtained and provided a cost estimate within eight days of communicating with ATS's counsel; and

- It provided its objections within ten days of communicating with ATS's counsel.[5]

Xerox's good faith is relevant for another reason:  courts across the country, including in this Circuit, hold that waiver of the attorney-client privilege is not automatic.  *First Savs. Bank v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995), *aff'd on reconsideration in* 902 F. Supp. 1366 (D. Kan. 1995), *rev'd on other grounds*, 101 F.3d 645 (10th Cir.1996) (noting in dicta that the district court committed no reversible error with respect to its orders relating to the

---

[4]    The expense to Xerox to comply with the Supboena is also important because ATS has not complied with its obligation under FRCP 45(d)(1) to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

[5]    No waiver would occur under Third Circuit law, either.  As the court held in *Packer v. Hansen*, 1999 WL 1038343 (E.D. Pa. Nov. 12, 1999), Rule 45's time limits to respond to a subpoena do not require the Court to find that a party waived its objections when it fails to respond to a subpoena within 14 days.  *Id.* at *2.  Instead, the Court will look to whether late objections "were so disruptive of the discovery process as to warrant such severe sanctions."  *Id.*  There is no record—in fact, ATS makes no such claim—that Xerox's late objections disrupted the discovery process in any way.  In fact, ATS took three weeks after receiving Xerox's objections to file its motion to compel.

discovery dispute); *see also In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. 66, 70 (D.

Mass. 2009) (rejecting per se waiver requirement).   Waiver of privilege is an "exceedingly harsh

sanction," *Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264, 274, 2004 U.S. Dist. LEXIS

4577, 2004 WL 547536 (E.D. Va. 2004), *continued consideration provided in* 222 F.R.D. 280

(E.D. Va. 2004), that must be determined on a case-by-case basis after consideration of all the

circumstances. *Eureka Fin. Corp. v. Hartford Accident & Idem. Co.*, 136 F.R.D. 179, 183–84

(E.D. Cal. 1991); *Ritacca v. Abbott Lab.*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("In the end, the

determination of waiver must be made on a case-by-case basis.").   Given the sanctity of the

attorney-client privilege and the seriousness of privilege waiver, courts generally find waiver

only in cases involving unjustified delay, inexcusable conduct, **and** bad faith.  *First Savs. Bank*,

902 F. Supp. at 1361; *see Dep't of Justice Subpoenas to ABC*, 263 F.R.D. at 71 (stating waiver is

appropriate when conduct "evinces a 'deliberate pattern of delay' and is 'egregious'."); *Welch v.*

*Eli Lilly & Co.*, No. 1:06–cv–00641, 2009 WL 700199, at *14 (S.D. Ind.  Mar. 16, 2009) (noting

waiver is a serious sanction and declining to find the privilege waived despite defendant's

inadequate privilege log and failure to meet its burden of proving the documents were indeed

privileged); *White v. Graceland Coll. Ctr. for Prof. Develop. & Lifelong Learning, Inc.*, 586 F.

Supp. 2d 1250, 1266 (D. Kan. 2008) ("Acknowledging the harshness of a waiver sanction,

however, courts have reserved such a penalty for only those cases where the offending party

committed unjustified delay in responding to discovery."); *Herbalife Int'l, Inc. v. St. Paul Fire &*

*Marine Ins. Co.*, No. 5:05cv41, 2006 WL 2715164, at *4 (N.D. W. Va. Sept. 22, 2006) (noting

some courts have extended waiver of a privilege only to cases involving unjustified delay,

inexcusable conduct or bad faith); *Ritacca*, 203 F.R.D. at 335 (noting courts reserve the sanction

of waiver for those cases in which the offending party committed unjustified delay in responding to discovery).

None of the three prerequisites to waiver of the privilege—unjustified delay, inexcusable conduct, **and** bad faith—exists here.  Consequently, even if the Court were (i) to consider the motion notwithstanding ATS's noncompliance with the Local Rules and (ii) find that Xerox waived some objections, the Court should not find that Xerox waived privilege.

**B.     ATS Is Required To Bear The Costs Of Xerox's Electronic Discovery.**

ATS's position, seeking the extreme sanction of waiver of objections, appears to be driven by the second issue: who should pay for the electronic discovery that is necessary to comply with the subpoena.  As an initial matter, waiver of objections and bearing the costs of responding to a subpoena are unconnected.  Rule 45(e)(1)(D) requires that the responding party raise burdensome costs in response to a motion to compel, not before, and that is precisely what Xerox has done here.  Indeed, as noted above, the court in *In re Motorsports* required the requesting party to bear the costs of the responding party's response to the subpoena, notwithstanding its many instances of dilatory conduct.

ATS states in its motion that paper files should have been produced already, but the fact is that Xerox, a technology solutions company, stores its records electronically.  For that reason, Xerox's in-house counsel informed ATS's counsel on May 13 that he would obtain a cost estimate to comply with the subpoena, and for that reason Xerox identified 29 individuals, in

seven different departments, whose electronic records would be searched to comply with the subpoena.[6]

ATS relies on a Western District of Virginia case to argue that Xerox should bear the expense of electronic discovery, estimated to be at least $60,000, but ATS misapplies that case.[7] There, the court analyzed the request for expenses under a three-part test: whether the nonparty has an interest in the outcome of the case; whether the nonparty can more readily bear the costs than the requesting party; and whether the litigation is of public importance.  *See Bell Inc. v. GE Lighting, LLC*, 2014 WL 1630754, at *1 (W.D. Va. April 23, 2014).

ATS concludes the application of these factors favors, at a minimum, the sharing of costs, but ATS's position misapplies two elements of the test and is incomplete as to the third.  First, while Xerox has an interest in the litigation, it is the Philadelphia Parking Authority that, if ATS prevails on its counterclaims, will be required to respond; Xerox's rights are secondary to the PPA's.  Second, and with all due respect to the parties, their suit is not "of great public importance."  Although the Red Light Program unquestionably is of great public importance to Philadelphia residents, the significance of the lawsuit cannot be conflated with that of the

---

[6]    In a May 20 conversation, Xerox's counsel provided this information to ATS's counsel.

[7]    Third Circuit case law also does not support ATS's position.  In *R.J. Reynolds Tobacco v. Philip Morris*, 29 Fed. Appx. 880 (3rd Cir. 2002), the Third Circuit held that the district court abused its discretion in denying a nonparty's request for compensation.  In that case, the Third Circuit held:

> Fed. R. Civ. P. 45 (c)(2)(B) imposes mandatory fee shifting and directs the court to "protect" a nonparty from "significant expense resulting from inspection and copying commanded."  Thus, district courts must determine whether the subpoena imposes expenses on a non-party and whether those expenses are significant.  Significant expenses must be borne by the party seeking discovery.  The district court abused its discretion when it denied Wawa compensation without determining the existence and magnitude of Wawa's expenses.

*Id.* at 882-83 (internal citations omitted) (emphasis added).

DMEAST #19169322 v2

underlying program, which will continue regardless of who prevails in the lawsuit.  Stated differently, it is unlikely, if not impossible, that any member of the public cares whether Xerox or ATS fulfills the contract, so long as it is fulfilled.  Certainly, residents of the District of Maryland would not consider Philadelphia's Red Light Program of "great public importance." Finally, ATS contends that Xerox, "a much bigger company that ATS," "will have no issues readily bearing the costs" of complying with the subpoena.  (ATS's Brief at 7.)  That, however, is not the test.  ATS has failed to show, or even argue, that Xerox has greater undedicated resources available to pay for the discovery ATS seeks.  ATS, a private company, claims on its website to have "more than 300 customers and over 3000 Road Safety Camera Systems operating throughout the United States and Canada," and "has more major metropolitan clients than any other vendor."  Because, according to its own website, ATS is a sophisticated and large company, it readily can bear the costs of the discovery it seeks.

DMEAST #19169322 v2

## IV.     CONCLUSION

For these reasons, Xerox respectfully request that the Court deny ATS's motion and order

that it bear the costs of the discovery it seeks.


Respectfully submitted,


_____
Glenn A. Cline (Fed. Bar No. 26672)
BALLARD SPAHR LLP
300 East Lombard Street
18th Floor
Baltimore, MD  21202-3268
Phone:  (410) 528-5600
Fax:     (410) 528-5650
E-mail:  clineg@ballardspahr.com

*Attorneys for Defendant,*
*Xerox State & Local Solutions, Inc.*


Date:   June 27, 2014


Of Counsel:
John C. Grugan, Esquire
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103

Attorneys for Defendant,
Xerox State & Local Solutions, Inc.

DMEAST #19169322 v2

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2014, the foregoing Response of

Defendant, Xerox State & Local Solutions, Inc. to Plaintiff's Motion to Compel Production of

Subpoenaed Information was filed electronically and served on counsel of record via the Court's

CM/ECF Filing System.


_____

Glenn A. Cline